JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | **CV 20-7225-JFW**<br>[2:19-bk-23823-VZ] | Date: January 27, 2021 |
| Title: | In Re: TBH19 LLC, Debtor<br>TBH19 LLC -v- DBD Credit Funding LLC, et al. | |

**PRESENT:**

       **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS:<br>None | ATTORNEYS PRESENT FOR DEFENDANTS:<br>None |
|---|---|

**PROCEEDINGS (IN CHAMBERS):**   ORDER AFFIRMING BANKRUPTCY COURT'S JULY 28, 2020 ORDER DENYING DEBTOR'S MOTION FOR INSTRUCTIONS FROM THE COURT REGARDING FUNDS RECEIVED FROM THE U.S. SMALL BUSINESS ADMINISTRATION LOAN AND MOTION FOR AN ORDER AUTHORIZING DEBTOR TO BORROW MONEY AND AUTHORIZING THE EXECUTION OF LOAN DOCUMENTS NUNC PRO TUNC TO JUNE 1, 2020

      On May 18, 2020, Appellant TBH19 LLC ("Appellant" or "Debtor") filed an appeal from the United States Bankruptcy Court's July 28, 2020 Order Denying Debtor's Motion for Instructions from the Court Regarding Funds Received from the U.S. Small Business Administration Loan and Motion for an Order Authorizing Debtor to Borrow Money and Authorizing the Execution of Loan Documents Nunc Pro Tunc to June 1, 2020 ("July 28, 2020 Order"). On October 26, 2020, Appellant filed its Opening Brief. On November 25, 2020, Appellee DBD Credit Funding LLC ("DBD") filed its Brief. On December 23, 2020, Appellant filed a Reply Brief. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's January 15, 2021 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

   **A.      Debtor's $40,000,000 Loan**

In December 2015, Debtor, which is operated and indirectly owned by Leonard M. Ross ("Ross"), obtained a $40,000,000 loan from DBD, a commercial finance lender, which was secured by certain real property located at 1011 N. Beverly Drive, Beverly Hills, California, 90210 (the "Property"), along with other collateral.  Debtor claims that the Property is valued at $115,000,000, and Debtor's purported business is to rent the Property as a "filming location," for "parties and . . . social affairs," and for other residential purposes.  Appellant's Opening Brief, p. 10.  Debtor and DBD entered into a Loan and Security Agreement, and Debtor executed various other loan documents, including a Promissory Note, Deed of Trust, Representation and Warranty Agreement, and UCC Financing Statement.

Debtor induced DBD to make the loan based in part on various representations, warranties, and covenants.  For example, Debtor agreed that "the proceeds of the Loan shall be used only for commercial purposes, and not for personal, household or consumer purposes," and that, during all relevant times, "the Property shall not be used as a personal residence."  However, DBD later discovered that these representations were false.  Indeed, at a Debtor examination, Ross admitted that he was living, and continues to live, at the Property for approximately eight or nine months per year.  Ross produced a lease that provides for rent payments of $104,167 per month, which is a fraction of its advertised rental rate of $600,000 per month.

   **B.      Debtor Defaults on the Loan and Initiates Litigation in Los Angeles Superior Court.**

Debtor defaulted multiple times under the loan agreement, including by failing to make a scheduled installment payment and failing to pay delinquent property taxes.  As a result of Debtor's multiple defaults, DBD commenced a non-judicial foreclosure proceeding and on September 3, 2019 recorded a Notice of Default and Election to Sell.  On September 16, 2019, Debtor filed an action against DBD and other related parties in Los Angeles Superior Court, entitled *TBH19 LLC et al. v. Bookstein et al.*, Case No. 19-ST-CV-32941 ("LASC Action"), seeking to prevent the foreclosure.  In response, DBD filed a cross-complaint in the LASC Action seeking appointment of a receiver and judicial foreclosure.

   **C.      Debtor Files a Voluntary Petition in the Bankruptcy Court Under Chapter 11.**

On November 24, 2019, just days before a hearing on DBD's request for the appointment of a receiver, Debtor filed a voluntary Chapter 11 Petition in the Bankruptcy Court for the Central District of California.  Ross then removed the LASC Action to the Bankruptcy Court, and later sought and obtained an order from the Bankruptcy Court remanding the LASC Action.  In remanding the LASC Action, the Bankruptcy Court recognized that there was a "strong likelihood that" the Debtor's removal was "tactical in nature for the purpose of inducing delay."  Debtor's bankruptcy case remains pending.

**D.     Debtor Unsuccessfully Moves for Authorization to Obtain Post-Petition Financing.**

On December 24, 2019, Debtor filed its first motion for approval of post-petition financing. Debtor's motion sought permission from the Bankruptcy Court to borrow between $250,000 and $750,000 from Ross (or other unnamed lenders) at an interest rate of six percent per year. The United States Trustee (the "Trustee") and DBD opposed Debtor's motion, arguing that Debtor's motion failed to describe basic terms of the proposed unsecured line of credit. DBD also argued that Debtor had failed to demonstrate that the proposed unsecured line of credit was "necessary for the preservation of the estate." See 11 U.S.C. §§ 364(b) and 503(b)(1)(A). On January 14, 2020, the Bankruptcy Court conducted a hearing on Debtor's motion. The Bankruptcy Court denied Debtor's motion, concluding that Debtor's motion did not "establish a need to borrow money based upon income that allegedly is generated by this property and the expenses incurred in maintaining this property." The Bankruptcy Court also concluded that Debtor's motion contained "significant discrepancies" regarding "how much money is being borrowed" and "specifically who the lender is." In addition, the Bankruptcy Court concluded that Debtor had offered "absolutely no evidence" that it attempted to "approach different lenders to provide this borrowing and what terms those lenders may have provided."

On May 7, 2020, Debtor filed its second motion for approval of post-petition financing, which sought permission from the Bankruptcy Court to borrow between $350,000 and $800,000 from Ross (and/or his personal trust) at an interest rate of four percent per year. Debtor also informed the Bankruptcy Court that it had applied for a loan from the Small Business Administration ("SBA") that had not yet been approved. Debtor represented to the Bankruptcy Court that it "would not enter into any loan documents without first obtaining an order . . . for the authorization to sign said documents." DBD and other creditors opposed Debtor's second motion because Debtor failed to specify the exact amount of the unsecured line of credit, failed to disclose material terms of the insider deal, and failed to demonstrate that the proposed transaction was necessary to preserve the estate. On May 28, 2020, the Bankruptcy Court conducted a hearing on Debtor's second motion. The Bankruptcy Court denied Debtor's second motion because, among other reasons, the Bankruptcy Court concluded that there was "a complete lack of specificity" regarding the "terms" of the proposed transaction and Debtor "failed to carry its burden to show that the borrowing is in the best interests of the estate." The Bankruptcy Court also concluded that Debtor's purported evidence concerning "the possibility of alternative financing" to be "completely lacking in specificity." The Bankruptcy Court suggested that, instead of pursuing these loans, Ross should simply do "what insiders and equity holders under our economic system [are] supposed to do and . . . put capital into [his] investment."

**E.     Appellant Obtains a $150,000 Secured Loan from the SBA.**

Nine days after the Bankruptcy Court's order denying Debtor's second motion for approval of post-petition financing and without prior authorization, Debtor obtained an Economic Injury Disaster Loan ("EIDL") for $150,000 at an interest rate of 3.75 percent from the SBA. On June 12, 2020, Ross executed the Loan Authorization and Agreement, the Note, and the Security Agreement. The EIDL was secured by "all tangible and intangible personal property" of the estate and the Note provides enumerated events of default, including: failing to "disclose . . . any material fact to SBA"; making a "materially false or misleading representation to SBA"; or becoming "the

subject of a proceeding under any bankruptcy or insolvency law." The loan funds were disbursed into Debtor's account on June 15, 2020.

### F. The Bankruptcy Court Denies Appellant's Motion for Retroactive Authorization to Incur Additional Secured Debt.

On June 29, 2020, Debtor filed a motion for retroactive approval of the SBA loan and "instructions" regarding the SBA loan.[1] In his Motion for Instructions from the Court Regarding Funds Received from the U.S. Small Business Administration Loan and Motion for an Order Authorizing Debtor to Borrow Money and Authorizing the Execution of Loan Documents Nunc Pro Tunc to June 1, 2020 ("Motion"), Debtor argued that the loan would benefit the estate, but did not fully explain its failure to seek prior authorization from the Bankruptcy Court. Despite acknowledging the denial of its "two prior applications to borrow funds," Debtor made no attempt to demonstrate its compliance with the requirements of 11 U.S.C. § 364(c). Instead, Debtor merely suggested that its failure to comply with the Bankruptcy Court's orders and the Bankruptcy Code was somehow a "misunderstanding," and that Ross "signed the final loan documents" under the purported assumption that he was merely "completing the loan application." Debtor insisted that the Bankruptcy Court was required to defer to its exercise of "business judgment," and encouraged the Bankruptcy Court to retroactively authorize the loan with little scrutiny.

DBD opposed Debtor's Motion, arguing, amongst other things, that Debtor disregarded the Bankruptcy Court's prior orders and failed to satisfy its burden on the Motion. The Bankruptcy Court agreed with DBD, finding "significant deficiencies" and denied Debtor's request for retroactive approval of post-petition financing. At the July 21, 2020 hearing, Debtor's counsel was unable to answer several of the Bankruptcy Court's questions regarding the circumstances surrounding Debtor's procurement of the unauthorized SBA loan. After full and complete hearing on Debtor's Motion and in light of the inadequate responses to its questions, the Bankruptcy Court found that it was "unclear" whether Debtor had disclosed to the SBA that it was "a debtor in possession in a Chapter 11 bankruptcy case" or whether it provided an "accurate and true statement" when applying for the SBA loan. Specifically, the Bankruptcy Court ruled:

> This is a motion. It's called a motion for instructions. I presume that is styled upon motions that are often brought in receivership actions by a receiver to a court because a receiver is actually working directly for the court. I am treating this as a motion for authority to borrow money as opposed to what it is described as by the name of the motion.
>
> In reviewing the motion, there are significant deficiencies with regards to issues that were raised in the application of -- for the loan of the SBA. Number one, it's unclear to me whether or not there was express disclosure made by the debtor in possession with regards to whether -- that it was indeed a debtor in possession in a Chapter 11 bankruptcy case at the time of the application.

---

[1] On June 17, 2020, Debtor filed an "emergency" application seeking the same relief on shortened notice. However, the Bankruptcy Court denied the application and instructed Debtor to file its Motion on "regular notice" pursuant to the Local Bankruptcy Rules.

Next, it is unclear to me whether there were -- there's no explanation given to me with regards to the statement of lost profits or lost rent, what that is a reference to. Is that reference to rents that are to be paid by Ross -- Mr. Ross and Ross entities or other entities that did not make payments? So it's unclear that there was an accurate and true statement given to the SBA in the making of a loan.

There are other oppositions raised . . . by DBD essentially which I find have little or no value. Number one, there was evidence given to me that there was an attempt to find other loans, unsecured loans, and that the debtor was unable to do so. And there was also the evidence given to me by DBD with regard to the adverse interest in the collateral was a declaration by an attorney who did not lay a foundation or personal knowledge with regards to the creation and perfection of the security interest in the collateral. So that was not convincing. But again -- and finally, the fact that there were prior orders denying motions to borrow with regard to other terms, other loans with other lenders, did not in any way bar the debtor from bringing a motion to approve a borrowing from the SBA.

So based upon the foregoing findings of fact and conclusions of law, this motion is denied.

Following the Bankruptcy Court's denial of Debtor's Motion, Debtor filed this appeal.

## II.     Issues on Appeal

The issue presented for review is whether the Bankruptcy Court appropriately denied Debtor's Motion for retroactive authorization to incur additional secured debt pursuant to 11 U.S.C. § 364(c).[2]

## III.    Legal Standard

The standard of review of bankruptcy court decisions by district courts is well-established, and uncontested by the parties. When reviewing decisions of a bankruptcy court, district courts apply standards of review applicable to the courts of appeals when reviewing district court decisions. *In re Baroff*, 105 F.3d 439, 441 (9th Cir.1997); *see also In re Fields*, 2010 WL 3341813,

---

[2] Debtor contends that the issues presented for review on appeal are: (1) whether the Bankruptcy Court erred by denying the Motion because it believed that the SBA's EIDL program did not allow loans to debtors in possession; (2) whether the Bankruptcy Court abused its discretion by failing to address the proper criteria regarding the Motion and substituted its discretion for that of the SBA underwriters; (3) whether the Bankruptcy Court erred by denying the Motion because it believed that the Debtor had not provided accurate information to the SBA; and (4) whether the Bankruptcy Court erred by ignoring Appellant's request for instructions regarding the disposition of the funds from the SBA Loan. However, all of these issues are properly addressed as part of the determination whether the Bankruptcy Court appropriately denied Debtor's Motion.

*2 (E.D. Cal. 2010) ("A district court's standard of review over a bankruptcy court's decision is identical to the standard used by circuit courts reviewing district court decisions.") (citation omitted).

On appeal, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Federal Rules of Bankruptcy Procedure 8013. A district court reviews a bankruptcy court's factual findings "'under the clearly erroneous standard and its conclusions of law de novo.'" *Acequia, Inc. v. Clinton* (*In re Acequia, Inc.*), 787 F.2d 1352, 1357 (9th Cir. 1986) (*quoting Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986)). "Mixed questions of law and fact are reviewed de novo." *Beaupied v. Chang* (*In re Chang*), 163 F.3d 1138, 1140 (9th Cir.1998). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) *(quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Savage v. Greene* (*In re Greene*), 583 F.3d 614, 618 (9th Cir. 2009). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson*, 470 U.S. at 573. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574. Finally, the bankruptcy court's orders denying retroactive approval of post-petition financing are reviewed for abuse of discretion. *In re Maximus Computers, Inc.*, 278 B.R. 189 (9th Cir. BAP 2002); *Film Ventures Int'l, Inc. v. Asher (In re Film Ventures Int'l, Inc.)*, 75 B.R. 250, 253 (9th Cir. BAP 1987). A bankruptcy court necessarily abuses its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence or if the bankruptcy court commits a clear error of judgment in the conclusion it reached. *Beatty v. Traub (In re Beatty)*, 162 B.R. 853, 855 (9th Cir. BAP 1994).

IV.  **Discussion**

In its appeal, although Debtor concedes that it failed to seek the approval of the Bankruptcy Court pursuant to 11 U.S.C. § 364(c) before obtaining post-petition financing in the form of a $150,000 loan from the SBA, Debtor argues that the Bankruptcy Court should have retroactively approved the transaction and allowed Debtor to make use of the SBA loan proceeds. Debtor argues that the Bankruptcy Court should have deferred to Debtor's purported "business judgment" and approved the loan.[3]

In its opposition, DBD argues that the Bankruptcy Court acted within its discretion in denying Debtor's Motion for retroactive approval of the SBA loan because the Debtor did not, and cannot, satisfy the factors set forth by the Ninth Circuit in *Harbin*. In addition, DBD argues that Debtor's argument that the Bankruptcy Court erred by refusing to provide "instructions" regarding

---

[3] In addition, Debtor repeatedly argues that the Bankruptcy Court denied its motion for retroactive authorization because the Bankruptcy Court "believed that the SBA's EIDL program did not allow loans to debtors in possession." However, despite Debtor's argument to the contrary, the Bankruptcy Court did not make any such determination, either in its written order or its oral findings.

disposition of the loan proceeds is disingenuous because it is clear that Debtor should simply return the loan proceeds because the loan was improperly obtained without the prior approval of the Bankruptcy Court.

      **A.**    **The Bankruptcy Court Did Not Abuse Its Discretion in Denying Debtor's Motion.**

            **1.**    **Debtor Violated 11 U.S.C. § 364(c) By Incurring Secured Debt Without Prior Court Authorization**

Section 364(c) of the Bankruptcy Code provides a mechanism for the debtor in possession to obtain credit on a superpriority or secured basis.[4]  Specifically, if the debtor is "unable to obtain unsecured credit allowable . . . as an administrative expense, the court, *after notice and hearing*, may authorize the obtaining or the incurring of debt" with: (1) a priority over any or all administrative expenses; (2) security in the form of a lien on unencumbered assets; or (3) security in the form of a junior lien on assets that are already encumbered.  11 U.S.C. § 364(c) (emphasis added); *see also* 11 U.S.C. § 102(1) (defining "after notice and a hearing"); Fed. R. Bankr. P. 4001(c) (setting forth the procedures for "obtaining credit").  As the Ninth Circuit has made clear, the debtor in possession must "obtain the bankruptcy court's authorization before incurring secured debt."  *In re Harbin*, 486 F.3d 510, 521 (9th Cir. 2007) (noting that the prior authorization requirement "stems from section 362 of the Bankruptcy Code, which prohibits post-petition encumbrances on the bankruptcy estate"); *see also In re Boss Litho*, 2018 WL 6072329, at *2 (9th Cir. BAP Nov. 20, 2018) (holding that "[a]pproval must be obtained before incurring the debt").

In this case, Debtor admits that the SBA loan is "secured" by property of the estate.  Debtor also concedes that it was required to seek permission from the Bankruptcy Court before obtaining such a loan.  Indeed, Debtor filed two prior motions for authorization to obtain an unsecured credit line pursuant to 11 U.S.C. § 364(b).  In addition, in the second of those motions, Debtor discussed its then-pending SBA loan application and assured the Bankruptcy Court and creditors that it "would not enter into any loan documents without first obtaining an order . . . for the authorization to sign said documents."  However, instead of complying with its representations (or, alternatively, withdrawing its EIDL application), Debtor executed the SBA loan documents a mere nine days after the Bankruptcy Court denied Debtor's second motion for post-petition financing.[5]  Therefore, the Court concludes that by incurring secured debt without prior Bankruptcy Court authorization, Debtor violated the terms of Section 364(c) and blatantly disregarded the Bankruptcy Court's prior orders.  *See In re Harbin*, 486 F.3d at 521 ("Chapter 11 debtors in possession are required to obtain the approval of the bankruptcy court when they wish to incur secured debt."); *In re McConville*, 110 F.3d at 50 (holding that debtors in possession are "fiduciaries of their own estate owing a duty of care and loyalty to the estate's creditors").

---

    [4]  Although Section 364(c) refers to "the trustee," it is also applicable to debtors in possession.  *In re McConville*, 110 F.3d 47, 50 (9th Cir. 1997); *see also* 11 U.S.C. § 1107(a) (describing the rights, powers, and duties of the debtor in possession).

    [5]  The funds were disbursed into Debtor's account three days after Debtor signed the loan documents.

### 2. Debtor Cannot Satisfy The Ninth Circuit's Four Factor Test for Retroactive Authorization

In the Ninth Circuit, bankruptcy courts have "equitable discretion" to grant retroactive approval of post-petition financing. *In re Harbin*, 486 F.3d at 521-22. When a debtor improperly obtains credit without prior Bankruptcy Court approval, the four factors a bankruptcy court must consider in granting retroactive approval are: "(1) whether the financing transaction benefits the bankruptcy estate; (2) whether the [debtor] has adequately explained its failure to seek prior authorization or otherwise established that it acted in good faith when it failed to seek prior authorization; (3) whether there is full compliance with the requirements of section 364(c) . . .; and (4) whether the circumstances of the case present one of those rare situations in which retroactive authorization is appropriate." *Id.* at 523. If the debtor satisfies all of these criteria, "the bankruptcy court *may, but need not*, grant an application for *nunc pro tunc* authorization." *Id.* (emphasis added). The Ninth Circuit has cautioned that retroactive approval should be limited "to situations in which 'exceptional circumstances' exist." *Id.* at 522 (*quoting In re Atkins*, 69 F.3d 970, 974 (9th Cir. 1995)) (cautioning that the mere availability of equitable discretion should not encourage debtors to engage in "general non-observance of the prior authorization requirement"). Indeed, "retroactive authorizations are disfavored" by courts across the country because they "circumvent Congress' determination that before a court authorizes a post-petition transfer, prior notice must be given to creditors." *In re Photo Promotion Assocs., Inc.,* 881 F.2d 6, 9 (2d Cir. 1989). Thus, retroactive approval is "limited to extraordinary or unusual circumstances." *In re Ward*, 546 B.R. 667, 679 (Bankr. N.D. Tex. 2016); *In re Lehigh Valley Prof'l Sports Clubs, Inc.*, 260 B.R. 745, 751 (Bankr. E.D. Pa. 2001) (noting that retroactive approval "requir[es] a higher threshold"); *Matter of Grand Valley Sport & Marine, Inc.*, 143 B.R. 840, 851 (Bankr. W.D. Mich. 1992) (finding that the need for retroactive approval "must be more 'compelling'"); *see also* 3 *Collier on Bankruptcy* ¶ 364.03[2] (16th ed. 2020) ("[S]everal courts have held that the . . . Bankruptcy Code mandates . . . stringent standards for retroactive approval of financing.").

In this case, the Bankruptcy Court's July 28, 2020 Order and its determination that Debtor failed to satisfy the standard for retroactive approval of post-petition financing with respect to the SBA loan is affirmed. *See In re Boss Litho*, 2018 WL 6072329, at *3 (affirming denial of motion for retroactive approval, where debtor "did not provide an adequate explanation for its failure to seek prior authorization" or establish that the case presented a "rare situation" necessitating such exceptional relief). Although the Bankruptcy Court in its July 28, 2020 Order did not recite specific findings as to each of the four factors under *Harbin*, such specific findings are not necessary where "a complete understanding of the issues may be obtained from the record as a whole." *See In re Boss Litho*, 2018 WL 6072329, at *2. For example, in *Boss Litho*, the Bankruptcy Appellate Panel of the Ninth Circuit affirmed the bankruptcy court's denial of retroactive approval of post-petition financing even though the bankruptcy court "did not make specific findings as to the reasons for its denial of retroactive approval" because the record made clear that the bankruptcy court "implicitly applied the correct legal standard" and committed "no abuse of discretion." *Id.* at *3. Similarly, in this case, the Court concludes that the record makes clear that the Bankruptcy Court applied the correct legal standard and did not abuse its discretion in denying Debtor's Motion.

      **a.    Debtor Failed to Establish That The SBA Loan Benefits the Bankruptcy Estate**

      The first *Harbin* factor requires the bankruptcy court to consider "whether the financing transaction benefits the bankruptcy estate." In this case, Debtor argues that the SBA loan "is in the best interests" of the estate because the loan "will enable Debtor to continue to conduct its business" and help "to preserve assets of the estate." However, Debtor fails to offer any factual or legal support for this argument. For example, Debtor failed to offer any meaningful explanation how a loan for $150,000 loan would help facilitate reorganization and avoid liquidation of its assets. *See, e.g., In re Harbin*, 486 F.3d at 523 (holding that refinancing provided "substantial benefit to the estate" because "the cash infusion was sufficient to pay [debtor's] allowed creditors in full, without requiring further delay or subsequent liquidation"). Even with the additional $150,000 from the SBA loan, Debtor would be unable to maintain the estate and generate cash because Ross continues to live at the Property approximately seventy percent of the year while paying only one sixth of the advertised monthly rental rate. In addition, these below-market rent payments constitute Debtor's only recent source of revenue and most of the rent payments are simply deductions from a "pre-paid lease account."

      Debtor also argues that the Bankruptcy Court had no license to "disturb [its] sound business judgment" regarding the SBA loan and the Bankruptcy Court was required to "defer" to Debtor because the loan did not "contain terms that leverage the bankruptcy process" and was not designed "to benefit a party-in-interest." However, Debtor has failed to cite to any authority for the proposition that a bankruptcy court must retroactively approve an unauthorized transaction based solely on management's purported business judgment.

      Accordingly, the Court concludes that the Bankruptcy Court did not abuse its discretion in determining that Debtor failed to establish that the SBA loan benefits the bankruptcy estate.

      **b.    Debtor Did Not Adequately Justify Its Failure to Seek Prior Approval or Establish That It Acted in Good Faith.**

      The second *Harbin* factor requires the bankruptcy court to consider "whether the [debtor] has adequately explained its failure to seek prior authorization or otherwise established that it acted in good faith when it failed to seek prior authorization." In this case, although Debtor knew that it was required to obtain the Bankruptcy Court's permission before accepting the SBA loan, Debtor argues that Debtor's acceptance of the SBA loan was merely a "misunderstanding," and that Ross believed that he was merely "completing the loan application." The Court finds this argument unpersuasive. Debtor had already represented to the Bankruptcy Court and creditors that it "would not enter into any loan documents without first obtaining an order . . . for the authorization to sign said documents." However, despite that representation to the Bankruptcy Court, Ross, who is a practicing attorney with decades of experience, signed documents on behalf of Debtor that very clearly indicated that Debtor was accepting the SBA loan, not merely completing the loan application. For example, the Note expressly provides that, "[b]y signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower" and that "[b]y signing . . . below, each individual and each organization becomes jointly and severally obligated as a Borrower under this [Security] Agreement." Similarly, the Loan Authorization and Agreement explicitly provides that it is "legally

binding, enforceable and approved upon Borrower's signature."

In addition, Debtor argues that the Bankruptcy Court improperly "questioned" the circumstances surrounding the transaction and, thus, "substituted its discretion for that of the SBA underwriters." Debtor also argues that the Bankruptcy Court incorrectly assumed that Ross "misled" the SBA concerning Debtor's Chapter 11 status and with respect to certain financial information. However, in making those arguments, Debtor ignores that, under *Harbin*, the Bankruptcy Court was required to consider whether the Debtor has "adequately explained its failure to seek prior authorization" or "otherwise established that it acted in good faith." *See In re Harbin*, 486 F.3d at 523. Moreover, the Bankruptcy Court reasonably concluded based on Debtor's counsel's inability to answer basic questions regarding the SBA loan transaction that the record regarding the transaction was, at best, "unclear." Furthermore, the loan documents signed by Ross on behalf of Debtor strongly suggests that Debtor failed to act in good faith. *See In re 239 Worth Ave. Corp.*, 236 B.R. 492, 495 (Bankr. S.D. Fla. 1999) (holding that "entering into unauthorized post-petition financing arrangements" was indicative of bad faith, showed "a profound disregard" for the debtor's fiduciary duties, and "jeopardize[d] the interest of creditors"). For example, in the Security Agreement, Debtor certified to the SBA that "ownership in or title to the [c]ollateral is free of all adverse claims, liens, or security interests," despite the fact that the collateral is part of the bankruptcy estate and is subject to the claims of several secured creditors.[6] Debtor also certified to the SBA that "none of the [c]ollateral is or will be used . . . primarily for personal, family[,] or household purposes," despite the fact that Ross resides at the Property approximately seventy percent of the year at a below market rental rate.

Accordingly, the Court concludes that the Bankruptcy Court did not abuse its discretion in determining that Debtor failed to adequately explain its failure to seek prior authorization for the SBA loan or otherwise establish that it acted in good faith when it failed to seek prior authorization for the loan.

### c. Debtor Failed to Fully Comply With the Requirements of Section 364(c).

The third *Harbin* factor requires the bankruptcy court to consider "whether there is full compliance with the requirements of section 364(c)." Under Section 364(c), a debtor in possession may only seek credit on a secured basis, when it is "unable to obtain unsecured credit allowable . . . as an administrative expense." 11 U.S.C. § 364(c). In this case, Debtor argues in conclusory fashion that it "sought alternative financing without success" but fails to provide any evidence regarding those attempts. However, such conclusory statements are insufficient to satisfy Section 364(c). *See, e.g., In re Los Angeles Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) (denying post-petition financing where debtors "failed to attempt to obtain unsecured financing"); *In re Phase-I Molecular Toxicology Inc.*, 285 B.R. 494, 496 (Bankr. D.N.M. 2002) (denying post-petition financing where debtor "failed to meet its burden of showing that no alternative

---

[6] Specifically, DBD has a secured and perfected interest in all of Debtor's real and personal property, including "[a]ll machinery, furniture, furnishings, equipment, computer software and hardware, fixtures . . . and other property of every kind and nature, whether tangible or intangible, whatsoever."

financing is available on any other basis").

In addition, Debtor's argument that its "two prior motions" constitute "evidence" of the requisite efforts necessary to obtain alternative financing is unpersuasive. The Bankruptcy Court denied both of those motions, in part, because Debtor provided "absolutely no evidence" regarding alternative financing and merely offered assertions that were "completely lacking in specificity." *See In re Boss Litho*, 2018 WL 6072329, at *3 (rejecting debtor's argument that simply mentioning "the possibility of seeking financing" during "a prior hearing" was sufficient to justify retroactive authorization).

Accordingly, the Court concludes that the Bankruptcy Court did not abuse its discretion in determining that Debtor failed to establish that it fully complied with the requirements of Section 364(c).

### d. Debtor Fails to Establish That This Case Presents a "Rare Situation" Necessitating Retroactive Authorization.

The fourth *Harbin* factor requires the bankruptcy court to consider "whether the circumstances of the case present one of those rare situations in which retroactive authorization is appropriate." In this case, Debtor argues that the SBA loan was a necessary because Debtor's "business and income were severely adversely affected" after state and local governments began imposing shelter-in-place orders in response to the Covid-19 pandemic. However, Debtor defaulted under its loan agreement with DBD in July 2019 and filed its voluntary bankruptcy petition in November 2019. As Debtor concedes, the spread of Covid-19 did not precipitate a national emergency until March 2020. Thus, Covid-19 does not amount to an "exceptional circumstance" in this case because Debtor's consistent pattern of defaults began well before the pandemic.

Accordingly, the Court concludes that the Bankruptcy Court did not abuse its discretion in determining that Debtor failed to establish that the circumstances of this case presented one of those rare situations in which retroactive authorization is appropriate.

### B. Debtor Must Return the Loan Proceeds to the SBA.

Finally, Debtor argues that the Bankruptcy Court erred because it "declined to provide instructions for the disposition of the SBA funds." Debtor argues that the Bankruptcy Court was required to either retroactively authorize the loan or provide specific instructions regarding the proceeds. However, Debtor does not cite any statutory authority or case law to support its argument beyond a generic invocation of the Bankruptcy Court's "inherent powers" and an unadorned citation to the "all writs" provision of the Bankruptcy Code (11 U.S.C. § 105(a)). The Court finds Debtor's argument unpersuasive. "Where the borrowing is out of the ordinary course of business and prior court authorization is not obtained, . . . the loan transaction may be cancelled or disregarded." 3 *Collier on Bankruptcy* ¶ 364.03[2]. Thus, the appropriate remedy once the Bankruptcy Court failed to retroactively authorize Debtor's SBA loan was the cancellation of the loan and the return of the funds to the SBA. *See In re McConville*, 110 F.3d at 50 (explaining that cancellation is an "appropriate remedy" because "[i]t is disruptive of bankruptcy for an estate to obtain fresh credit without regard to the court now supervising the estate"). Although this Court

concludes that the Bankruptcy Court did not err in failing to provide specific instructions regarding the proceeds of the SBA loan, this Court orders Debtor, to the extent it has not already done so, to return the loan proceeds to the SBA. In the unlikely event that Debtor requires any guidance or instructions in connection with the return of the funds to the SBA, Debtor shall seek an appropriate ruling from the Bankruptcy Court.

### V.     Conclusion

For all the foregoing reasons, the Bankruptcy Court's July 28, 2020 Order is **AFFIRMED**, and this appeal is dismissed with prejudice.

IT IS SO ORDERED.